IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SALLY KENNEDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-2175-JWL |
| ) | |
| NORTH AMERICAN COMPANY FOR ) | |
| LIFE AND HEALTH INSURANCE, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

In this case, plaintiff seeks to recover as beneficiary under a life insurance policy

issued by defendant insurer. This matter is presently before the Court on the parties'

cross-motions for summary judgment (Doc. ## 20, 22). The Court concludes, as a matter

of law, that the insured's policy did lapse for non-payment of premiums, and that

defendant is entitled to rescission of the policy based on material misrepresentations

contained in the insured's application for reinstatement. Accordingly, the Court **denies**

plaintiff's motion, **grants** defendant's motion, and awards summary judgment in favor

of defendant.

### I.     Facts

The following facts are uncontroverted.

In 2000, defendant North American Company for Life and Health Insurance

(NACOLAH) issued a term life insurance policy to insured David Kennedy.  Plaintiff Sally Kennedy was named as beneficiary.  With respect to the payment of premiums, the policy provided for a grace period of 31 days after each premium due date.  The policy further provided that if a premium remained unpaid after the grace period, the policy would terminate as of that premium's due date.

On August 30, 2004, defendant mailed Mr. Kennedy a notice that his quarterly premium of $97.61 was due on September 20, 2004.  The notice also stated that if that premium was not paid by the due date or within the grace period, the policy would be forfeited and rendered void.  Mr. Kennedy did not pay the premium due by the due date or within the grace period.

On November 10, 2004, defendant sent Mr. Kennedy a notice that the grace period had expired and that his policy had therefore terminated, effective September 20, 2004.  The notice further provided that Mr. Kennedy could request a reinstatement application, and that reinstatement of the policy was conditioned on defendant's approval of Mr. Kennedy's evidence of insurability.  On November 16, 2004, Mr. Kennedy submitted a reinstatement application together with payment of the past due premium.  By letter dated November 22, 2004, defendant returned Mr. Kennedy's reinstatement application and requested that Mr. Kennedy resubmit his application on a different form, and Mr. Kennedy did so, giving essentially the same medical history information that he gave in the original reinstatement application.  Defendant then reinstated Mr. Kennedy's policy.

On his reinstatement application, Mr. Kennedy stated that he had last consulted with his personal physician, Dr. John Bernard, on July 4, 2004, for the following reason: "Routine Physical – No Findings."  Mr. Kennedy also answered "No" to the question whether he had been diagnosed or treated by a medical professional, since his original 2000 application, for stroke, cancer, brain or mental disease, or a few other enumerated conditions.  The next question asked whether the applicant had "[c]onsulted, been examined or treated by any medical professional, or been admitted to or treated at a hospital or other care facility for any disease or condition not indicated" in the previous question; Mr. Kennedy responded "Yes," explained as follows:  "Involved in an auto accident on Feb 2004.  Hospitalized 3 days days [sic].  Shoulder injury.  Nearly recovered."  These answers were essentially identical to the answers given in Mr. Kennedy's initial reinstatement application.

In fact, Mr. Kennedy visited Dr. Bernard on July 22, 2004.  Mr. Kennedy began to mumble incoherently, and Dr. Bernard summoned an ambulance because he feared that Mr. Kennedy was having a stroke.  Mr. Kennedy was seen at the hospital by Dr. Jay Zwibelman, who testified that he diagnosed a stroke and that he would have informed Mr. Kennedy of that diagnosis. On August 9, 2004, Mr. Kennedy made a follow-up visit to Dr. Bernard relating to the "ischemic stroke," as described by Dr. Bernard.  Dr. Bernard testified that Mr. Kennedy knew that he was there because he had suffered a stroke.

On November 16, 2004, Mr. Kennedy again visited Dr. Bernard.  According to

3

the doctor's testimony, Mr. Kennedy stated that he was having renewed difficulty reading, finding words, and communicating, and that he wondered whether he was suffering any new changes relating to the stroke he suffered the previous July.  (Both of Mr. Kennedy's reinstatement applications were dated November 16, 2004.)

Dr. Bernard's notes from November 19, 2004, state that an MRI revealed a necrotic mass in Mr. Kennedy's brain; that he discussed that result with Mr. Kennedy; and that he recommended that Mr. Kennedy proceed to the hospital for admission.  Mr. Kennedy was referred to Dr. David Lee, who saw Mr. Kennedy on December 13, 2004. Dr. Lee's history indicates that Mr. Kennedy presented in July 2004 with symptoms consistent with a subacute ischemic injury or stroke.  Dr. Lee concluded at that time that Mr. Kennedy's tumor, which was diagnosed in November 2004, was related to the apparent stroke suffered by Mr. Kennedy in July 2004.

Mr. Kennedy died on July 25, 2006, as a result of his malignant brain tumor. Plaintiff submitted a claim for benefits under the life insurance policy, defendant denied the claim, and this suit followed.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the

nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th

Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to

resolve the issue either way."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215,

1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition

of the claim."  *Id.*

### III.    Lapse of the Policy – Plaintiff's Motion for Summary Judgment

In response to plaintiff's claim for benefits under Mr. Kennedy's policy,

defendant asserts that the policy lapsed, effective September 20, 2004, for non-payment

of the premium due; and that it is entitled to rescind the subsequently-reinstated policy

because of material misrepresentations contained in Mr. Kennedy's reinstatement

application.   Plaintiff seeks summary judgment on the basis of her argument that

defendant did not effectively terminate the policy under Kansas law,[1] that the policy

therefore did not lapse, and that any misrepresentations contained in the reinstatement

application are therefore moot.  Defendant does not dispute that its rescission defense

depends on its purported termination of the policy in 2004.

---

[1]Because it sits in Kansas, this Court applies that state's choice-of-law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under Kansas law, the Court applies the substantive law of the state in which the particular insurance contract was made.  *See Simms v. Metropolitan Life Ins. Co.*, 9 Kan. App. 2d 640, 642-46, 685 P.2d 321, 324-26 (1984).  It appears that defendant issued its policy to Mr. Kennedy in Kansas, where he resided, and the parties agree that Kansas law applies to this dispute. Accordingly, the Court applies Kansas law here.

Whether the policy lapsed in this case turns on the application of K.S.A. §§ 40-410 and 40-411.  Section 40-410 makes it unlawful for an insurer, within six months after default in payment of the premium, to forfeit or cancel any life insurance policy because of that non-payment without first giving written notice to the owner of the policy.  *Id.* § 40-410.[2]  Section 40-411 describes the required notice as follows:

> Before any such cancellation or forfeiture can be made for the non-payment of any such premium the insurance company shall notify the policyowner of any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such policyowner shall have the right at any time within thirty (30) days after such notice . . . to pay such premium: *Provided*, That in lieu of the notice hereinbefore provided, in the case of policies providing for a period of grace of not less than thirty (30) days, or one month, for the payment of premiums and containing any provision for cancellation or forfeiture in case of nonpayment of premiums at the end of such period, the insurance company may, not more than thirty (30) days prior to the date specified in such policy when any premium will become due and payable without grace, in like manner notify the policyowner under any such policy, of the date when such premium will fall due, stating the amount thereof, and its intention to forfeit or cancel the same if such premium be not paid within the period of grace provided in the policy; and any attempt on the part of such insurance company, within six (6) months after default in the payment of any premium, to cancel or forfeit any such policy without the notice herein provided shall be null and void.  . . .

*Id.* § 40-411.

---

[2]By its terms, section 40-410 does not apply any policy with at least a four-week grace period under which the premium is to be paid weekly, biweekly, or monthly. Although Mr. Kennedy's original policy called for monthly premium payments, it appears that Mr. Kennedy was paying quarterly premiums at the time of the purported termination of the policy.  Defendant's August 2004 payment due notice and its November 2004 termination notice both refer to Mr. Kennedy's quarterly premium payment.  Accordingly, section 40-410 does apply in the present case.

Section 40-411 thus describes two possible types of written notice to effect a termination within six months after a default in the payment of premiums. First, as provided in the main clause of the statute, the insurer may give notice that the premium is "due and unpaid." *Id.* The Kansas Supreme Court has long held that such notice cannot be sent until after the expiration of the due date and any grace period. *See Priest v. Bankers' Life Ass'n of Des Moines, Iowa*, 99 Kan. 295, 161 P. 631 (1916), *cited in Logan v. Victory Life Ins. Co.*, 175 Kan. 88, 94, 259 P.2d 165, 169-70 (1953) (reviewing history of section 40-411). An insured may then avoid forfeiture of the policy by paying the outstanding premium amount within thirty days after any such notice. K.S.A. § 40-411. As noted by plaintiff, defendant sent a notice of termination in November 2004, after the grace period expired, but Mr. Kennedy paid the outstanding premium amount within thirty days of that notice. Therefore, plaintiff seeks summary judgment on the basis that defendant did not comply with the initial clause of section 40-411 to effect a proper termination of the policy.

In response, defendant argues that it properly terminated the policy by providing the alternative notice authorized in the proviso to section 40-411. The proviso applies to any policy that (1) provides a thirty-day grace period for payment of premiums and (2) contains a provision for cancellation in the case of non-payment at the end of such period. Mr. Kennedy's policy, as submitted to the court by the parties, meets these requirements (and plaintiff does not argue otherwise). Accordingly, defendant was entitled to make use of section 40-411's alternative form of notice, which may be sent

within thirty days before the policy due date (not counting the grace period).  *See id.*

Defendant mailed such a notice to Mr. Kennedy on August 30, 2004, informing him that

his premium payment was due on September 20, 2004, and that  failure to pay by the end

of the grace period after that date would result in termination of the policy.[3]  Thus, the

Court agrees that defendant complied with the statute's requirements for termination for

non-payment.

Plaintiff argues that defendant cannot rely on section 40-411's proviso because

the alternative notice is only available in the case of a policy that does not contain a

grace period for payment.  Plaintiff apparently relies on the words "without grace"

contained in the proviso.  A simple reading of the statute, however, reveals that those

words are used only in describing the time when the alternate notice may be

given—within thirty days before the date on which the premium will be due "without

grace," or without consideration of any grace period.  *See* K.S.A. § 40-411.  Moreover,

the proviso clearly applies "in the case of policies providing for a period of grace" of at

---

[3]Section 40-411 provides that an affidavit of a responsible agent of the insurer that this notice was mailed shall be prima facie evidence that such notice has been duly given.  K.S.A. § 40-411.  Defendant has submitted an affidavit in which its manager states that under defendant's standard procedure, such a premium due notice would have been generated by a computer twenty-one days before the September 20 due date and mailed the same day.  Plaintiff has not controverted that evidence or suggested that Mr. Kennedy did not receive the notice.  Accordingly, defendant's evidence is sufficient to establish compliance with the statute.  *See, e.g.*, *Federal Kemper Life Assur. Co. v. Ellis*, 28 F.3d 1033, 1039-40 (10th Cir. 1994) (proof of usual computer procedures is sufficient to show proper mailing; lack of receipt by insured does not rebut presumption of compliance with the requirement of mailing notice).

least thirty days. *Id.*

Plaintiff complains that application of the proviso in this manner allows an insurer to effect a forfeiture based solely on notice given before the due date, without any notice after default; and that with a thirty-day grace period, the notice can be sent up to sixty days before the true due date, with the insurer simply sitting back and waiting for the policy to lapse. Such complaints are better addressed to the Kansas Legislature, however. The statute unambiguously provides that a termination within six months of default for non-payment may be accomplished in this manner, and the Kansas Supreme Court has given effect to such a notice as that given by defendant in this case—within thirty days prior to the beginning of the grace period—for almost eighty years. *See, e.g.*, *Mauck v. Great Am. Life Ins. Co.*, 150 Kan. 636, 95 P.2d 325 (1939); *Hildyard v. Mutual Life Ins. Co. of N.Y.*, 145 Kan. 197, 64 P.2d 7 (1937); *Wegner v. Federal Res. Life Ins. Co. of K.C.*, 130 Kan. 600, 287 P. 591 (1930); *see also Minnesota Mutual Life Ins. Co. v. Cost*, 72 F.2d 519 (10th Cir. 1934) (giving effect to similar notice under section 40-411); *Logan*, 175 Kan. at 92, 259 P.2d at 168 (similar notice would have been good if policy contained requisite forfeiture provision to make proviso applicable). The Court therefore rejects these arguments by plaintiff.

Finally, plaintiff argues that defendant's August 30 notice was ambiguous. Specifically, plaintiff points to a statement in the notice, contained in a section titled "For 'Flexible Premium' Plans only," that an additional notice would be sent during the grace period before the policy ended. Plaintiff argues that Mr. Kennedy might have expected

another notice before termination, based on this provision for "Flexible Premium" plans, because his own plan was an "Adjustable Premium Level Term Life Insurance" policy.

This argument is without merit. First, the notice is not ambiguous as asserted by plaintiff. The additional-notice provision clearly applied only to certain policies called "Flexible Premium" plans. Indeed, the notice's use of capital letters and quotation marks indicate that the provision applied only to policies with that specific title, and Mr. Kennedy's policy did not include that designation. Nor has plaintiff shown that defendant was contractually obligated, under the terms stated in the policy, to provide an additional notice. Moreover, the lack of any evidence that Mr. Kennedy actually relied on the "Flexible Premium" provision dooms any argument based on estoppel.

For these reasons, plaintiff is not entitled to summary judgment, and her motion is denied. The court concludes as a matter of law that defendant effectively terminated Mr. Kennedy's policy, in compliance with the Kansas notice statutes, effective September 20, 2004.

### IV.    <u>Rescission of the Policy – Defendant's Motion for Summary Judgment</u>

Defendant seeks summary judgment based on its affirmative defense that Mr. Kennedy's reinstatement application, on which defendant relied in approving reinstatement of the policy, contained material misrepresentations, and that defendant may therefore rescind the policy. The parties agree that defendant must establish the following elements for this defense, as set forth recently by the Kansas Court of Appeals:

> With respect to a life insurance policy, the insurer generally has the right to rescind the policy ab initio for fraud or misrepresentation. *See Slaby v. Cox*, 250 Kan. 429, Syl. ¶ 1, 827 P.2d 18 (1992). Such misrepresentations include an untrue statement of fact, known to be untrue by the putative insured, made with the intent to deceive or recklessly made with disregard for the truth, upon which the insurer justifiably relies and acts to its detriment. *See American States Ins. Co. v. Ehrlich*, 237 Kan. 449, 452, 701 P.2d 676 (1985). To justify rescission, the insurer must establish that the false statement actually contributed to the event triggering the obligation to pay benefits under the policy. *See* K.S.A. 40-2205(C); *Waxse v. Reserve Life Ins. Co.*, 248 Kan. 582, 586, 809 P.2d 533 (1991).

*Chism v. Protective Life Ins. Co.*, 40 Kan. App. 2d 629, 632-33, 195 P.3d 776, 780 (2008). The fraud "may also consist of the omission of a material fact." *Id.* at 636, 195 P.3d at 782 (citing *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 260, 978 P.2d 922 (1999) and *Umbehr v. Board of Wabaunsee County Comm'rs*, 252 Kan. 30, Syl. ¶ 4, 843 P.2d 176 (1992)). "Finally, fraud is never presumed but must be shown by clear and convincing evidence." *Id.* at 633, 195 P.3d at 780 (citing *Gonzalez v. Allstate Ins. Co.*, 217 Kan. 262, 266, 535 P.2d 919 (1975)); *see also North Tex. Prod. Credit Ass'n v. McCurtain County Nat'l Bank*, 222 F.3d 800, 813 (10th Cir. 2000) ("clear and convincing" standard for fraud applies at summary judgment stage).

First, there is no doubt that Mr. Kennedy's November 2004 reinstatement application contained misstatements of fact. Mr. Kennedy stated that he had last seen his doctor, Dr. Bernard, in July 2004, even though he had seen him at least twice since that visit. Mr. Kennedy specifically denied having been treated for or diagnosed with a stroke or cancer, even though he had been diagnosed with a stroke in July 2004 and had sought and received treatment for that stroke in the following months. He also had had an MRI

11

and been diagnosed with a brain tumor by the time of his final reinstatement application.

Mr. Kennedy also failed to mention his treatment and hospitalization for the stroke and

tumor when asked about any other medical treatments or hospitalizations. Mr. Kennedy

thus made untrue statements of fact in his application.

The Court also concludes that defendant has satisfied the materiality and reliance

elements of its defense as a matter of law.

> The test of the materiality of a false statement in an application for
> life insurance is whether the misrepresentation could reasonably be
> considered to affect the insurer's decisions regarding the degree or
> character of the risk it is being asked to underwrite, whether to issue the
> policy, or what premium it should charge for the policy.

*Chism*, 40 Kan. App. 2d at 634, 195 P.2d at 781 (citing *Schneider v. Washington Nat'l*

*Ins. Co.*, 200 Kan. 380, 397, 437 P.2d 798 (1968)). Statements concerning an insured's

medical history and hospitalizations are generally considered material. *See Schneider*,

200 Kan. 380 Kan. at 397, 437 P.2d at 812.

Plaintiff has not made any specific argument that the omitted medical history

would not have been material to defendant's decision concerning reinstatement of Mr.

Kennedy's policy. Nor has plaintiff offered any evidence to controvert the evidence by

defendant's chief underwriter that, under its applicable guidelines, defendant would not

have reinstated the policy if it had known Mr. Kennedy's true condition. Plaintiff does

note that defendant had been given Dr. Bernard's name in the reinstatement application;

Mr. Kennedy did not provide any other information suggesting a medical problem (other

than the healed shoulder injury) that might merit further investigation, however, and

therefore no issue of fact arises concerning the reasonableness of defendant's reliance on the application. *See Stewart v. American Life Ins. Co.*, 89 F.2d 743, 747 (10th Cir. 1937) (applying Kansas law).

The Court concludes that no reasonable jury could find that the information that Mr. Kennedy had suffered a stroke and was suffering from a brain tumor would not have had some effect on defendant's decisions whether and on what terms to insure his life. Accordingly, the Court concludes, as a matter of law, that the untrue statements of fact in Mr. Kennedy's application were material. *See, e.g.*, *Brown v. Metropolitan Life Ins. Co.*, 146 Kan. 300, 305, 69 P.2d 1110, 1113 (1937) (misrepresentations were material as a matter of law); *Scott v. National Res. Life Ins. Co.*, 143 Kan. 678, 683, 56 P.2d 76, 78 (1936), *modified*, 144 Kan. 224, 58 P.2d 1131 (1936) (same); *Chism*, 40 Kan. App. 2d at 634, 195 P.3d at 781 (same).

Nor has plaintiff offered any evidence to rebut defendant's evidence indicating that Mr. Kennedy made the misrepresentations knowingly, with intent to deceive or with reckless disregard for the truth. Plaintiff merely suggests that it is not clear that Mr. Kennedy knew that he had been diagnosed with a stroke, and that the question should be one for the jury. The evidence is uncontroverted, however, that Mr. Kennedy was told of the stroke diagnosis; that Mr. Kennedy later expressed concern to his doctor that he was experiencing symptoms relating to his stroke; and that Mr. Kennedy was told that an MRI had revealed a brain tumor. Plaintiff's only other argument is that Mr. Kennedy might have been confused in completing the application, in light of the confusion that

13

attended his stroke.  Plaintiff has offered no evidence, however, that Mr. Kennedy could not understand and answer the questions on his application.  To the contrary, the uncontroverted evidence demonstrates that Mr. Kennedy did understand his medical condition.

The Court concludes that defendant has established, by clear and convincing evidence, as a matter of law, that Mr. Kennedy did not act innocently in good faith in making the misrepresentations, but that he acted knowingly and with the requisite intent or reckless disregard.  It is significant that the misstatements did not concerns matters that might be considered subjective—Mr. Kennedy did not merely state that he felt himself to be in good health generally, for instance.  Rather, the misrepresentations concerned objective facts about visits to the doctor, hospitalizations, and concrete diagnoses that Mr. Kennedy undoubtedly knew—these were not matters subject to interpretation.  *See Brown*, 146 Kan. at 306, 69 P.2d at 1114 ("Some of the answers were not matters of the belief or opinion of the applicant, but were matters of fact which he well knew and which he answered falsely.") (quoting *Klein v. Farmers and Bankers Life Ins. Co.*, 132 Kan. 748, 751, 297 P. 730, 731 (1931)).

This conclusion is further supported by the facts that Mr. Kennedy was informed of his diagnoses by the doctors; he was hospitalized as a result of this condition; he was referred to a specialist; he followed up with his personal physician specifically because feared complications from his stroke; and an MRI revealed a tumor.  The court finds the timing of the applications particularly significant—Mr. Kennedy's follow-up with Dr.

14

Bernard occurred on November 16, 2004, the very same date given for the first reinstatement application, and Mr. Kennedy denied the existence of a stroke or cancer in his subsequent application only a short time after that visit and the MRI. Finally, the fact that Mr. Kennedy did not merely fail to provide any specific medical history at all, but instead mentioned a specific injury (to his shoulder) and a specific date on which he visited his personal physician, provides further evidence that his omission of his more serious medical condition and his doctor visits and hospital stays was intentional or at least done with reckless disregard for the truth.

In light of this evidence, the Court concludes that defendant has met its burden to establish this element of its defense by clear and convincing evidence. *See, e.g.*, *Brown v. Metropolitan Life Ins. Co.*, 146 Kan. 300, 306-07, 69 P.2d 1110, 1114 (1937) (finding requisite intent as a matter of law); *Scott v. National Res. Life Ins. Co.*, 143 Kan. 678, 683, 56 P.2d 76, 78 (1936), *modified*, 144 Kan. 224, 58 P.2d 1131 (1936) (same); *Chism*, 40 Kan. App. 2d at 634, 195 P.3d at 781 (same).

Finally, Kansas statutes require defendant to show that the matter misrepresented "actually contributed" to the event triggering payment under the policy (in this case, Mr. Kennedy's death). *See* K.S.A. §§ 40-418, -2205(C); *see also Waxse*, 248 Kan. at 586, 809 P.2d 533. Plaintiff points to testimony by one physician, Dr. Zwibelman, that he could not know for certain whether the June 2004 stroke was related to the brain tumor revealed in the November 2004 MRI. Plaintiff has offered no evidence, however, that the two events were *not* in fact related. Thus, plaintiff has not controverted Dr. Lee's

15

testimony that the two events *are* related.  Moreover, plaintiff does not dispute that the brain tumor discovered in November 2004 led to Mr. Kennedy's death.  Mr. Kennedy's corrected application, which defendant approved, was not submitted until sometime after November 22, 2004, by which time Mr. Kennedy had been diagnosed with the brain tumor.  Accordingly, no reasonable jury could find that the matters misrepresented—the existence of the stroke and brain tumor—did not actually contribute to Mr. Kennedy's death.

Accordingly, defendant has established, as a matter of law, all of the necessary elements of its defense by clear and convincing evidence.  Defendant is therefore entitled to summary judgment on plaintiff's claim under the policy.


IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (Doc. # 20) is hereby **denied**, defendant's motion for summary judgment (Doc. # 22) is hereby **granted**, and judgment will be entered in favor of defendant accordingly.


IT IS SO ORDERED.


Dated this 15th day of May, 2009, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

16